UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE CARL DAVIS,

    Plaintiff,

       v.                              CAUSE NO. 3:25-CV-364-PPS-AZ

JOSEPH SCHNEIDER,

    Defendant.

OPINION AND ORDER

    Jermaine Carl Davis, a prisoner without a lawyer, filed an amended complaint. ECF 7. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

    Davis, who is currently incarcerated at the Indiana State Prison, filed a grievance on January 21, 2025, because "a steel shelf in my cell fell off the wall and injured my leg and lower back." ECF 7 at 4. He filed another grievance on February 3, 2025, because "the maintenance man told me . . . that he seen the workorder about fixing the steel shelf, but didn't fix it and told me it wasn't his problem." *Id*. The next day, his cell was shaken down. He claims an unnamed officer planted a weapon in his cell in retaliation

for filing grievances against his coworkers, so he was sent to lockup.[1] On February 7, 2025, Unit Team Manager Joseph Schneider, who supervises Davis's employment as a suicide companion within the prison, "wrote me a false bad work evaluation and fired me from my job in retaliation for filing grievances against his co-workers." *Id*. at 2. Davis takes issue with this because the evaluation was filed before the disciplinary hearing on the conduct report was conducted. He believes he "could've got the write-up reduced to a C write-up or even dismissed, but he didn't wait for the outcome before he retaliated against me." *Id*.[2] Davis has sued UTM Schneider for monetary damages. He also states, "I want my job back as a suicide companion and all back pay." *Id*. at 6.

Davis has no liberty or property interest in a prison job, and being deprived of a job does not violate his procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *see also Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000). That said, the First Amendment prohibits some actions taken by state officials that are not, by themselves, illegal, but cannot be taken in retaliation for the exercise of protected First Amendment activity. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983."). To proceed on a claim for retaliation under the First Amendment, Davis must plausibly allege "(1) that he engaged in protected First

---

[1] This officer is not named as a defendant in this case.

[2] Davis doesn't, however, allege it actually *was* reduced or dismissed—in fact, he admits he was "found guilty" on February 27, 2025. ECF 7 at 2.

2

Amendment activity; (2) that an adverse action was taken against him, and (3) that his protected conduct was at least a factor that motivated the adverse action." *Adams v. Reagle*, 91 F.4th 880, 887 (7th Cir. 2024); *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

Here, Davis adequately alleges he engaged in First Amendment protected activity by filing the grievances. *See Gomez*, 680 F.3d at 866 (grievance qualifies as "protected activity"). He also sufficiently alleges he was subjected to an adverse action when he was fired from his suicide companion job. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (losing one's source of income is an action that "would likely deter a person of ordinary firmness from continuing to engage in protected activity") (quotation marks omitted)). What Davis hasn't done, however, is articulate why the grievances were a motivating factor in his firing. According to the amended complaint, the grievances involved a maintenance issue. Davis doesn't explain how those grievances were in any way related to UTM Schneider, his role in supervising the suicide companions, or any of his other responsibilities at the prison. In fact, Davis doesn't even plausibly allege that UTM Schneider knew about the grievances or their subject matter. He speculates that "all the staff here at Indiana State Prison talks to each other about the inmate grievances" and that several correctional officers have told him about "all the grievances" he has filed, but such broad conjecture isn't sufficient to state a claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the

3

law.) (emphasis in original)); *see also Szymankiewicz v. Doying*, 187 Fed. Appx. 618, 622 (7th Cir. 2006) (noting that neither the "mere fact" that a prisoner was disciplined nor "unsupported speculation and conjecture about the defendants' motives" demonstrates First Amendment retaliation).

Even more problematic for Davis is that his allegations suggest he was fired from his job due to the filing of the *conduct report* rather than the grievances. He states, "[As] soon as I got the conduct report on February 4, 2025, Joseph Schneider wrote the false bad work evaluation and fired me just three (3) days later." ECF 7 at 5.[3] Neither the conduct report, nor the actions alleged in it—namely, possession of a weapon—are protected activity. *See Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) ("Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners.") (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010)).

Davis claims the conduct report was meritless because an unnamed officer planted a weapon in his cell in retaliation for filing the grievances, but he doesn't allege UTM Schneider had anything to do with the cell shakedown, the alleged planting of the weapon, or the writing of the conduct report, nor does he plausibly allege UTM Schneider had any reason to know the conduct report was purportedly without merit. Davis makes much of the fact that the poor performance evaluation and firing were

---

[3] The Offender Evaluation and Performance Report attached to the amended complaint as an exhibit is consistent with this finding, as the "attitude and traits" section lists "conduct" and checks the box for "violates" next to it. *See* ECF 7-1 at 3. Other than requiring "constant" supervision, no other issues were marked as negative. *Id.*

4

implemented before the disciplinary hearing took place. However, it's not reasonable to infer a retaliatory motive based solely on a supervisor's decision to act quickly upon receipt of a conduct report rather than waiting for the full disciplinary proceedings to conclude—especially when the employment position in question is of a sensitive and important nature and the conduct report involves allegations of a weapon.[4] Finally, Davis mentions that UTM Schneider gave him a poor performance evaluation two years ago when he became aware that Davis threatened to file a grievance against his co-worker Jacqueline Mayes, but that allegation is too far removed and too factually distinct to support an inference of retaliation here. In sum, I find the matter of causation and retaliatory motive too attenuated to proceed against UTM Schneider. *See Swanson*, 614 F.3d at 403; *Szymankiewicz*, 187 Fed. Appx. at 622.

The amended complaint does not state a claim for which relief can be granted. Although it appears unlikely, if Davis believes he can state a claim based on (and consistent with) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the

---

[4] I note again that although Davis states he "could've got the write-up reduced to a C write-up or even dismissed," he doesn't allege that actually happened. ECF 7 at 2. He was found guilty of the charged offense.

5

word "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Accordingly:

(1) Jermaine Carl Davis is GRANTED until **March 17, 2026**, to file a second amended complaint; and

(2) Jermaine Carl Davis is CAUTIONED that if he doesn't respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

ENTERED:  February 16, 2026.

                                             /s/   Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT